**SO ORDERED.**

**SIGNED this 10 day of July, 2023.**

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SENECAL CONSTRUCTION CO., INC, and | ) ) | CASE NO 23-00421-5-JNC |
| PIEDMONT DRAGWAY OF NC, LLC | ) ) | CASE NO 23-00422-5-JNC |
| | ) | CHAPTER 11 |
| DEBTORS. | ) | |

Order Confirming Joint Plan

The joint plan under Chapter 11 of the Bankruptcy Code filed by the Debtors on May 16, 2023, having been transmitted to creditors and equity security holders, and the attorneys for the Bankruptcy Administrator, Pinnacle Bank, and the Trustee having announced their support for confirmation of the Plan as amended in court on June 22, 2023, and the requirements for confirmation set forth in 11 U.S.C. §1191(a) have been satisfied;

IT IS ORDERED THAT:

1. The Plan filed by the Debtor on May 16, 2023 and amended in open court

is CONFIRMED. A copy of the confirmed plan is attached as Exhibit "A."  For the convenience of parties, a redline copy of the Plan is attached as Exhibit "B."

2.      The Plan is additionally amended to provide that appropriate payroll taxes shall be withheld and paid in connection with all distributions made under the Joint Plan on behalf of wage claims.

3. The Debtors shall file post-confirmation reports with the Clerk of the U.S. Bankruptcy Court and serve a copy thereof on the Bankruptcy Administrator pursuant to 11 U.S.C. §1106(a)(7). The first post-confirmation report shall be due on October 31, 2023.  The Debtors shall file subsequent reports at the end of every succeeding calendar quarter (July 31, October 31, January 31, or April 31), until the Plan is substantially consummated. Quarterly reports shall reflect any progress made toward consummating the Plan during the period covered by the report and shall be prepared in a format prescribed by the Bankruptcy Administrator.

4.      Except as provided in this order and the Debtors' Joint Plan or in 11 U.S.C. 1141(d) of the Code, the Debtors are hereby released from all dischargeable debts.

5. Within fourteen (14) days of substantial consummation of the Plan, the Debtors shall file with the Court and serve upon the Trustee, the Bankruptcy Administrator, and all parties in interest notice of such substantial consummation in accordance with 11 U.S.C. § 1183(c)(2). Upon the filing of the notice of substantial consummation, the service of the Trustee shall terminate pursuant to 11 U.S.C. § 1183(c)(1) and the Trustee shall make a final report and file a final account of the administration of the estate within seven (7) days of the notice filed under Section 1183(c)(2). Upon the filing of the final report and account, the Trustee shall be discharged as trustee of the estate and the bond of the Trustee shall be cancelled. If the Trustee has not made any receipts or disbursements, the requirements of Sections 1183(b)(1) and 704(a)(9), that of making a final report and filing a final account of the administration of the estate, may be satisfied by filing a report of no distribution.

6. The Debtors shall pay to the Clerk, United States Bankruptcy Court, the sum of $0 for court costs.

7. The Debtors shall serve a copy of this Order on all creditors within five (5) days of the entry of this Order and promptly file a Certificate of Service with the Clerk.

**END OF DOCUMENT**

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SENECAL CONSTRUCTION CO., INC, | ) | CASE NO 23-00421-5-JNC |
| and | ) | |
| PIEDMONT DRAGWAY OF NC, LLC | ) | CASE NO 23-00422-5-JNC |
| | ) | |
| | ) | CHAPTER 11 |
| DEBTORS. | ) | |

### JOINT CHAPTER 11 PLAN

Pursuant to the provisions of Section 1189 and 1190 of Subchapter V of the Bankruptcy Code (11 U.S.C. §§ 1189 & 1190), the Debtors hereby submit the following Joint Plan of Reorganization ("Plan.") As detailed herein, the Debtors propose to pay all Allowed Claims in full with interest over time.

### Description and History of the Debtor's Business

Senecal Construction Co., Inc. ("Senecal") is a North Carolina corporation formed in 1998 with a principal offices and assets in Burlington, North Carolina. Senecal is a commercial metal framing and drywall company. The most recent monthly report for Senecal is attached to this Plan as Exhibit "A."

Piedmont Dragway of NC LLC ("Piedmont") is a North Carolina limited liability company formed in 2011 with a principal offices and assets in Julian, North Carolina. Piedmont is a dragway which hosts drag racing and dirt drag racing competitions and offers concessions. On January 12, 2023, WFO Racing, LLC ("WFO") merged with Piedmont. Piedmont was the surviving company after the merger. The most recent monthly report for Piedmont is attached to this Plan as Exhibit "B."

Both Senecal and Piedmont are owned by Roland E. Senecal. Mr. Senecal is the president and sole shareholder of Senecal and the sole member of Piedmont. Mr. Senecal has filed his own Chapter 11 petition, Case No. 23-00419-5-JNC, and is filing a separate Chapter 11 Plan in his individual case.

### Liquidation Analysis

To confirm this Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. Liquidation analyses for Senecal and Piedmont are attached to this Plan as Exhibit "C.". This Joint Plan proposes to pay all creditors in full with interest.

<u>Ability to Make Plan Payments and Operate without Further Reorganization</u>

To confirm this Plan, each Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. A projected monthly operating budget showing anticipated income, expenses, and payments under this Plan for each Debtor is attached as Exhibit D.

The Debtors believe that this Plan is feasible. The Plan also provides for the liquidation of real estate owned by Piedmont and Senecal in the event of an uncured default under the Plan.

ARTICLE 1
<u>DEFINITIONS</u>

The following terms used in this Chapter 11 Plan shall, unless the context otherwise requires, have the meanings specified below:

1.  Administrative Expense Claim:  a cost or expense of administration in the case allowable under § 503(b) of the Bankruptcy Code, including but not limited to any actual, necessary expense of preserving or liquidating the estate, any actual, necessary expense of operating the business of a Debtor, any actual, necessary expense of consummating the Plan and all allowances, costs and fees approved by the Bankruptcy Court in accordance with § 330 of the Bankruptcy Code.

2.  Allowed Administrative Expense Claim:  any existing or future Administrative Expense Claim either (i) for which a fee application has been filed and which has been allowed by a Final Order, or (ii) as to any other Administrative Expense Claim, an application was filed; and (a) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, or (b) any timely objection thereto has been determined and all or some portion of the claim has been allowed by a Final Order. Any post-confirmation costs and expenses reasonably necessary to consummate the Plan, including the bringing of adversary proceedings, shall also be included and paid as an Allowed Administrative Expense Claim.

3.  Allowed Claim:  any claim (a) which shall have been listed by Senecal or Piedmont in a known amount as undisputed, non-contingent, and liquidated on the Schedules filed with the Court and to which a Debtor does not file an objection with the United States Bankruptcy Court, or which is ultimately allowed by the Bankruptcy Court over such an objection; (b) which shall have been properly filed as a Proof of Claim with the United States Bankruptcy Court on or prior to June 12, 2023, and to which a Debtor does not file an objection with the United States Bankruptcy Court, or which is ultimately allowed by the Bankruptcy Court over such an objection; or (c) which arose out of the rejection of an executory contract or unexpired lease as provided for by the terms of this Plan, and which shall have been properly filed as a Proof of Claim with the United States Bankruptcy Court on or before the expiration of thirty (30) days after the Effective Date, and to which a

2

Debtor does not file an objection or which is ultimately allowed by the Bankruptcy Court over any such objection. Where there is a difference between the amounts scheduled as undisputed by a Debtor in his Schedules and the amount set forth in the Proof of Claim filed by an affected creditor, the amount shown in the Proof of Claim shall govern for purposes of allowance unless objected to by a Debtor, in which case, the Claim shall be the amount allowed by the Bankruptcy Court.  Unless otherwise specified in the Plan, Allowed Claims shall not include interest on the principal amount of the claim from and after the Filing Date.

4.      Allowed Unsecured Claim:  an Unsecured Claim that is or has become an Allowed Claim.

5.      Allowed Priority Tax Claim:  a Priority Tax Claim, which is or has become an Allowed Claim.

6.      Allowed Secured Claim:  a Secured Claim, which is or has become an Allowed Claim.

7.      Ballot:  the form or forms which will be distributed to Creditors pursuant to § 1125 of the Bankruptcy Code in connection with the Debtors' solicitation of acceptance or rejections of this Plan.

8.      Bankruptcy Code:  the Bankruptcy Reform Act of 1978, as amended, title 11 of the United States Code, in effect on the Filing Date.

9.      Bankruptcy Court:  the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in this case.

10.     Bankruptcy Rules:  the Federal Rules of Bankruptcy Procedure, as amended, in effect on the Filing Date.

11.     Business Day:  shall mean any day on which banks are open to carry on their ordinary commercial banking business in the State of North Carolina.

12.     Chapter 11 Cases:  the Chapter 11 cases of Piedmont and Senecal, commenced under the provisions of Chapter 11 of the Bankruptcy Code on the Filing Date in the Bankruptcy Court.

13.     Claim:  any right to payment, or any right to an equitable remedy for breach of performance if such breach gives rise to right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

14.     Class:  a class of Claims or Equity Interests as indicated in the Plan.

15.     Confirmation Date:  the date upon which an order confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, entered by the Bankruptcy Court, becomes a Final Order.

16.     Creditor:  any Entity that is the holder of a Claim against a Debtor that arose on or before the Filing Date or a Claim against a Debtor's estate of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code.

17.     Debtors: Senecal and Piedmont, the Debtors in these Chapter 11 Cases.

18.     Disputed Claim:  any Claim that is not an Administrative Expense Claim and either (i) is scheduled by a Debtor as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance thereof, in whole or in part, has been or is interposed prior to the final date provided under this Plan for the filing of such objections (or thereafter pursuant to an order of the Bankruptcy Court) and which objection has not been settled or determined by a Final Order.

19.     Disputed or Unresolved Administrative Expense Claim:  any existing or future Claim that is an Administrative Expense Claim and either : (i) (a) an application for payment was or will be filed on or before the date designated by this Plan, or pursuant to any order of the Bankruptcy Court, as the last date for filing the application for payment; and (b) as to which either (I) an objection to the allowance thereto has been interposed within the applicable period of limitation that has not yet been resolved by a Final Order, or (II) no Final Order has been issued if a Final Order is required by § 330 of the Bankruptcy Code; or (ii) an application for payment was filed after the last date designated for such filing as described above, whether or not an objection to the allowance thereof has been interposed.

20.     Distributable Property:  the property distributable to Creditors under this Plan, after deduction for any expenses properly chargeable against the Distributable Property in accordance with this Plan.

21.     Effective Date:  the date occurring fifteen (15) days after the Confirmation Date.

22.     Entity:  an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, or an incorporated organization.

23.     Filing Date: February 15, 2023, the date upon which the Debtors filed with the Bankruptcy Court their petitions for relief under title 11, commencing the Chapter 11 Cases.

24.     Final Order:  an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which any prescribed time to appeal has expired and no petition for certiorari is pending, or as to which any right to appeal or petition for certiorari has been waived in writing in a manner satisfactory to the Debtors

4

or, if an appeal or certiorari thereof has been sought, the order or judgment of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed, or certiorari has been denied, and the prescribed time to take any further appeal or to seek certiorari or further re-argument or rehearing of any appeal has expired.

25.     Plan:  this Chapter 11 Plan of Reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

26.     Plan Rate: Simple interest at the rate of 7.5%, or such interest rate as the Bankruptcy Court finds is necessary for confirmation of this Plan.

27.     Priority Tax Claim: any Claim, other than an Administrative Expense claim, which is entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

28.     Secured Claim:  the portion of any Claim against a Debtor determined in accordance with section 506(a) of the Bankruptcy Code, as of the Confirmation Date, secured by a valid, perfected and unavoidable lien.

29.     Trustee:  Ciara Rogers, or such other person as may be appointed as Trustee by the Bankruptcy Court.

30.     Unclaimed Property:  any funds which are unclaimed on the 120th day following the date on which such Unclaimed Property was mailed or otherwise sent to the holder of an Allowed Claim or allowed Administrative Expense Claim pursuant to this Plan, and shall include (i) checks (and the funds represented thereby) that have been returned as undeliverable without a proper forwarding address, (ii) funds for checks which have not been presented for payment and paid, and  (iii) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

31.     Unsecured Claim:  any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, or an Equity Interest.

32.     Unsecured Creditor:  any Creditor that holds an Unsecured Claim.


ARTICLE 2
CONSTRUCTION

2.1     Applicability of the Bankruptcy Code and Bankruptcy Rules: Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Bankruptcy Code and in the Bankruptcy Rules.

ARTICLE 3
MEANS FOR IMPLEMENTING PLAN

5

3.1     Means for Implementing the Plan.  Upon Confirmation of the Plan, the Debtors shall continue to operate their businesses and shall use their disposable income to implement the Plan.  Unless otherwise order by the Court, the Debtors shall make all payments called for under the Plan. The Debtors will review and, if appropriate, object to claims following confirmation of the Plan.

3.2     Closing Case.  After substantial consummation of the Debtors' Chapter 11 Plan, the Chapter 11 Case will be closed. If necessary, the case may be reopened for entry of the discharge. If the case is reopened for such purpose, it may be reopened without a fee to the court.

3.3     Interest, Penalties, Fees.  There shall be no pre-payment penalties in the event that the Debtors are able to make Plan payments ahead of any scheduled dates or time frames as set forth in the Plan. Except as expressly stated in the Plan, or as allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorneys 'fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

## ARTICLE 4
## CLASSIFICATION OF
## CLAIMS AND EQUITY INTERESTS

4.1     Classification of Claims and Interests.  Claims shall be classified as follows:

|  | Allowed Administrative Expense Claims |
| --- | --- |
| Class 1 | Allowed Priority and Secured Tax Claims of Senecal |
| Class 1A | Allowed Priority and Secured Tax Claims of Piedmont |
| Class 2 | Allowed Non-Tax priority Claims |
| Class 3 | Allowed Secured Claims of Pinnacle Bank |
| Class 4 | Allowed Secured Claims of Capital Community Bank |
| Class 5 | Allowed General Unsecured Claims of Senecal |

6

| Class 5A | Allowed General Unsecured Claims of Piedmont |
|----------|-----------------------------------------------|

## ARTICLE 5
## ALLOWED ADMINISTRATIVE EXPENSE CLAIMS

5.1     Allowed Administrative Expense shall be paid in cash in full on the Effective Date or upon entry of an Order allowing such Administrative Claim, whichever is later, except that professional fees and expense reimbursements shall be paid in cash in full upon entry of an Order allowing the same, or pursuant to any agreement between the Debtors and the holder of an Allowed Administrative Expense Claim.

5.2     Creditors shall file an application for payment for any Administrative Expense Claim arising prior to the Confirmation Date on or before the Effective Date.  Failure to file a timely application for payment shall bar any person or Entity from asserting such Claim against a Debtor, except any professional (including the Trustee) rendering services to a Debtor and required to file an application for compensation pursuant to 11 U.S.C. § 328.  The Debtors estimate that Allowed Administrative Expense Claims on the Effective Date will be approximately $60,000.  The Debtors believe they will have sufficient cash on hand on the Effective Date to pay these claims in full.

## ARTICLE 6
## ALLOWED PRIORITY AND SECURED TAX CLAIMS OF SENECAL
### (Class 1 Claims)

6.1     Description of Class. Class 1 Claims are comprised of Allowed Priority and Secured Tax Claims of Senecal.

6.2     Treatment.  Class 1 Claims held by taxing authorities shall be paid in full by Senecal with interest at the taxing authority's statutory rate (or at the Plan Rate for non-taxing authorities) in equal monthly installments (split pro-rata among Class 1) so that the final payment shall be made within 5 years of the Filing Date, with the first such payment to be made on the first day of the first month following the Effective Date. If the Plan is confirmed under 1191(b) of the Code rather than 1191(a) of the Code, then Senecal shall increase the payments to Class 1 so that all remaining Projected Disposable Income is paid to Class 1 until Class 1 is paid in full.

6.3     In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue ("Department") or the Debtor fails to timely file and pay all post-confirmation taxes due to the Department, the subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its

7

claims without further order of the Court.

The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and a expressly reserved and shall survive confirmation. The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the Confirmation Order, the North Carolina Department of Revenue shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

Notwithstanding any other provisions in the Plan and the confirmation order, the priority tax claims of the North Carolina Department of Revenue are expressly recognized to be nondischargeable, and the same are not included in any discharge that may be issued in this case, absent a judgment to the contrary in an adversary proceeding filed and served in accordance with F.R.Bankr. P. 7003 and 7004.

6.4    Class 1 Claims are impaired.

Priority and Secured Tax Claims of $325,001 have been scheduled or filed in the Senecal case. Some of these claims are for estimated taxes, and Senecal believes that the claims are overstated.

## ARTICLE 6A
## ALLOWED PRIORITY AND SECURED TAX CLAIMS OF PIEDMONT
### (Class 1A Claims)

6.1A    Description of Class.  Class 1A Claims are comprised of Allowed Priority and Secured Tax Claims of Piedmont.

6.2A    Treatment.  Class 1A Claims held by taxing authorities shall be paid in full by Piedmont with interest at the taxing authority's statutory rate (or at the Plan Rate for non-taxing authorities) in equal monthly installments (split pro-rata among Class 1A) so that the final payment shall be made within 5 years of the Filing Date, with the first such payment to be made on the first day of the first month following the Effective Date. If the Plan is confirmed under 1191(b) of the Code rather than 1191(a) of the Code, then Piedmont shall increase the payments to Class 1A so that all remaining Projected Disposable Income is paid to Class 1A until Class 1A is paid in full.

6.3A    In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue ("Department") or the Debtor fails to timely file and pay all post-confirmation taxes due to the Department, the subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court.

The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and a expressly reserved and shall survive

confirmation. The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the Confirmation Order, the North Carolina Department of Revenue shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

Notwithstanding any other provisions in the Plan and the confirmation order, the priority tax claims of the North Carolina Department of Revenue are expressly recognized to be nondischargeable, and the same are not included in any discharge that may be issued in this case, absent a judgment to the contrary in an adversary proceeding filed and served in accordance with F.R.Bankr. P. 7003 and 7004.

6.4     Class 1A Claims are impaired.

Priority tax claims of $69,204 have been scheduled or filed in the Piedmont case.  Some of these claims are for estimated taxes, and Piedmont believes that the claims are overstated.

### ARTICLE 7
### ALLOWED NON-TAX PRIORITY CLAIMS OF SENECAL
(Class 2 Claims)

7.1     Description of Class.   Class 2 is comprised of all Allowed Priority Claims of Senecal not included in Class 1.

7.2     Treatment of Claims.  Class 2 shall be paid in full by Senecal with interest at the Federal Judgment Rate in effect on the Effective Date in 54 equal monthly installments. The first payment shall be made on the first day of the first month following the Effective Date.

7.3     Impairment Status.  Class 2 is impaired under the Plan.

Priority claims of $102,377 have been scheduled or filed in the Senecal case.

### ARTICLE 8
### ALLOWED SECURED CLAIMS OF PINNACLE BANK
(Class 3 Claims)

8.1     Description of Class.   Class 3 is comprised of all Allowed Secured Claims of Pinnacle Bank as set forth in Claim No. 7 in the Senecal case and Claim No. 5 in the Piedmont case . Pinnacle Bank's claim are cross-collateralized and cross-defaulted and are over-secured.

8.2     Treatment of Claims. Class 3 shall retain its liens upon its collateral securing the loans, and such liens are valid encumbrances against the collateral, enforceable by Lender or its

9

assigns upon a post-confirmation default by one or both of the Debtors. Class 3 shall be paid in full, including interest and fees allowed under Bankruptcy code section 506(b), with interest to accrue on the outstanding balance of each loan as of the Effective Date at the variable interest rate equal to the Pinnacle Base Rate (the "Index") plus 1.0% in 60 equal monthly installments. The first payment shall be made on the first day of the first month following the Effective Date. It is estimated that approximately $8,667 per month will be made by Senecal, and $12,846 per month will be made by Piedmont, but both Debtors shall remain obligated to Class 3 and payments may be made be either Debtor. Unless otherwise expressly modified by the terms of this Plan, the Loan Documents that are not inconsistent with the Plan for the Claims shall remain in full force and effect.

Pinnacle Bank's pre-petition judgment lien against Senecal and Piedmont shall be deemed avoided without prejudice. Pinnacle Bank may enforce its rights under its loan documents and applicable state and/or federal law against Senecal and/or Piedmont following a post-confirmation default under one or more of the loans.

8.3    Impairment Status. Class 3 is impaired under the Plan.

Pinnacle has filed secured claims in the amount of $1,000,317, which figure does not yet include post-petition interest and fees.

## ARTICLE 8
## ALLOWED SECURED CLAIMS OF CAPITAL COMMUNITY BANK OF SENECAL
### (Class 4 Claims)

8.1    Description of Class. Class 4 is comprised of all Allowed Secured Claims of Capital Community Bank secured by the 2014 Ford F350 owned by Senecal.

8.2    Treatment of Claims. Class 4 shall be paid in full on the Effective Date.

8.3    Impairment Status. Class 4 is unimpaired under the Plan.

Capital Community Bank has been scheduled with a secured claim of $13,037.

## ARTICLE 9
## ALLOWED GENERAL UNSECURED CLAIMS OF SENECAL
### (Class 5 Claims)

9.1    Description of Class. Class 5 is comprised of the Allowed Claims of Senecal not treated elsewhere in the Plan.

9.2    Treatment of Claims. Class 5 shall be paid in full by Senecal with interest at the Federal Judgement Rate on the Effective Date in 60 equal monthly installments. The first payment shall be made on the first day of the first month following the Effective Date.

10

9.3    Impairment Status.  Class 5 is impaired under the Plan.

Senecal believes that General Unsecured claims in its case may total $370,000.

## ARTICLE 10
## ALLOWED GENERAL UNSECURED CLAIMS OF PIEDMONT
## (Class 5A Claims)

10.1    Description of Class. Class 5A is comprised of the Allowed Claims of Piedmont not treated elsewhere in the Plan.

10.2    Treatment of Claims. Class 5A shall be paid in full by Piedmont with interest at the Federal Judgement Rate on the Effective Date in 60 equal monthly installments. The first payment shall be made on the first day of the first month following the Effective Date.

10.3    Impairment Status.  Class 5A is impaired under the Plan.

Piedmont believe that General Unsecured Claims in its case may total $50,000.

## ARTICLE 11
## EQUITY INTERESTS

11.1    Ownership of the Debtors shall remain the same.

## ARTICE 12
## ALLOWED CLAIMS UNDER
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

12.1    Unexpired Leases and Executory Contracts. The confirmation of the Plan shall act as an acceptance of all leases and executory contracts listed in each Debtor s'Schedule G (as may be amended prior to the hearing on confirmation of the Plan) unless a motion to reject is filed prior to confirmation or a separate Court order is entered regarding such lease or contract. All parties shall have thirty (30) days from the Effective Date to file proof of claims for rejection damages.

## ARTICLE 13
## CAUSES OF ACTION

13.1    Except as expressly provided otherwise in this Plan, the Debtors preserve and intend to investigate and, if advisable, pursue causes of action arising under §§ 544, 545, 547, 548, 549, 550, or 553(b) of the Bankruptcy Code, or under any similar provisions of applicable state law to recover any preferences or fraudulent conveyances from any person. Funds recovered as a

11

result of such actions shall be applied first in reimbursement of attorney's fees and other costs of such actions, and then the remainder shall be the property of the Debtors and used to fund the Plan.

ARTICLE 14
CONFIRMATION AS WAIVER AND RELEASE

14.1    Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtors, which release is supported by the requirements of this Plan and covenants contained herein.

14.2    Injunction.  <u>As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debts or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtors may have against any party in interest.  This injunction shall not affect any creditor's ability to enforce rights against non-Debtor and non-Debtor property.</u>  **ALL LIENS NOT SPECIFICALLY PRESERVED BY THIS PLAN ARE EXTINGUISHED. ALL CREDITORS HOLDING SUCH LIENS ARE REQUIRED TO CANCEL THEM OF RECORD AND TERMINATE ALL UCC FINANCING STATEMENTS.**

14.3    Discharge.

A.    Consensual Confirmation Under § 1191(a).  The Debtors anticipate that the Plan will be confirmed consensually with the acceptance of all Impaired Classes, and the Debtors will be discharged pursuant to §1141 of the Code.

B.    Confirmation Under § 1191(b). If the Plan is confirmed under 1191(b) of the Code, the Debtors will receive a discharge as provided in section 1192.

**THE DEBTORS WILL ASK THE COURT TO CONFIRM THE PLAN UNDER § 1191(a).**

14.4    Until such time as the Discharge is entered, the provisions of the automatic stay shall remain in effect and be extended post-confirmation.  This provision of the Plan shall not apply to Pinnacle Bank.

ARTICLE 15
EXECUTION OF THE PLAN

15.1    Payments.  The Debtors will make payments as provided in this Plan, regardless of whether the Plan is confirmed under section 1191(a) or section 1191(b) unless the Court orders that payment be made by another party.

15.2    Events of Default. The occurrence of any of the following shall constitute an Event of Default of this Plan.

(i)    Failure to make payment as such payment comes due under the Plan.

15.3    Remedies Upon Default. Upon the occurrence of any Event of Default which not excused, postponed, modified, or waived, and after the affected creditor gives notice to a Debtor, the Debtor shall have 14 days to cure the default.  If the default is not cured within that period, then creditors may pursue all remedies under state and federal law.

Additionally, if the default is not cured, any party may require Piedmont to market and sell its real property by notifying Piedmont in writing.  Piedmont shall immediately forward a copy of the written notice to Pinnacle Bank upon receipt of such notice.  Pinnacle Bank is not prohibited in any way from enforcing its rights against the real property, notwithstanding a party's request to Piedmont to market and sell the real property.  Any delay or forbearance in enforcing its rights against the real property and/or the Debtors by Pinnacle Bank shall not constitute a waiver of any of its rights and interests under its loan documents and applicable law nor prejudice Pinnacle Bank in any way from enforcing its rights and interest in the future.

Net Proceeds from the sale of the real property shall be used to pay Allowed Claims in the following order:
a.    Class 3
b.    Allowed Administrative Expense Claims
c.    Class 1A
d    Class 5A
e.    Classes 1 and 2.
f.    Class 5
g.    Class 4

15.4    Revesting of Property of the Debtors. Property of the Estate shall re-vest in the Debtors following the Effective Date. At such time, the Debtors will hold all right, title and interest to the property of the Debtors.

15.5    Unclaimed Property.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Debtors shall not attempt to make any further distribution to such holder of the claim. If a distribution check is not negotiated by the creditor

13

within 90 days of the date of the check, or the distribution check is not deliverable to the creditor by way of First Class U.S. Mail, addressed to the address listed in the Creditor's Proof of Claim or on the Petition, the Debtors will be entitled to void said check and retain said funds to be used in the Debtors' discretion.  Any Creditor whose funds are once not negotiated or are returned as described above shall not be part of any subsequent distribution.

ARTICLE 16
DEFECTS OR OMISSION

16.1    Defects or Omissions.   After confirmation, the proponents of the Plan may, with approval of the Court, remedy any defect or omission or reconcile any inconsistencies in the Plan, Disclosure Statement or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan, Disclosure Statement, or Confirmation Order, so long as such remedy does not materially or adversely affect the interests of creditors and other parties in interest.

ARTICLE 17
OTHER PROVISIONS

17.1    Extension of Payment Dates.  If any payment under the Plan falls due on a Saturday, Sunday, or other day which is not a Business Day, then such due date shall be extended to the next following Business Day.

17.2    Notices.  Any notice to a Debtor under any obligations created or governed by this Plan must be in writing and sent by registered or certified mail, postage pre-paid, and addressed as follows (and to such other address as a Debtor may notify the creditor in writing):

> Ron Senecal
> P.O. Box 515
> Alamance, NC 27201

With Copies to:

> William P. Janvier, Esq.
> 6300 Creedmoor Rd., Suite 170-370
> Raleigh, NC 27612
> Tel.: (919) 582-2300

Notices must also be e-mailed to wjanvier@smvt.com and the e-mail on file for William Janvier with the Bankruptcy Court.

17.3    Reduction of Notice Periods. The notice period applicable to service of any notices on the creditors otherwise applicable, pursuant to the provisions of the Code or this Plan, including any notice of hearing on application or allowance of compensation of professional

14

persons pursuant to Section 330 of the Code, is reduced to a fourteen (14) day period, inclusive of the three days for mailing pursuant to Rule 9006(f) of the Bankruptcy Rules with the exception of any applicable notice period relating to modification of the Plan prior to or after confirmation pursuant to Sections 1122 and 1123 of the Code. If no objections are filed in writing with the Court within said fourteen (14) day notice period, any said motion may be allowed by the Court without the necessity of further notice or hearing.

17.4    Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, deeds, or bills of sale or assignments of real or personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax. All sale transactions consummated by a Debtor and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including, without limitation, the sale by a Debtor of owned property pursuant to section 363(b) of the Bankruptcy Code and the assumption, assignment and sale by a Debtor of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, will be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, will not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. In addition, each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of this Plan.

17.5    Procedure for Payment of Professional Fees and Expense Reimbursement. Current counsel for the Debtors, and the current Court approved accountants for the Debtors shall not be subject to the fee application process for services rendered post-confirmation in furtherance or implementation of the confirmed Plan.

17.6    No Representations or Warranties Concerning Tax Attributes/Consequences. Neither Debtors nor the Reorganized Debtors make any representations or warranties to any creditor of the Debtor concerning the tax consequence of confirmation of this Plan of Reorganization, the effect of this Chapter 11 case, or as to the status of tax attributes of the Debtors.

17.7    Transfer of Claims. Claims may be transferred and will be honored only in accordance with Bankruptcy Rule 3001.

17.8    Claims Paid by Third Parties. To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not a Debtor, such creditor shall, within two (2) weeks therefrom, inform the Debtors of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan and such payments shall be credited towards the Debtor's payment obligations under the Plan.

ARTICLE 18
ACCEPTANCE OR REJECTION OF PLAN;
EFFECT OF REJECTION BY AN IMPAIRED CLASS

18.1    Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

18.2    Acceptance by a Class of Creditors.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two- thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

18.3    Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1)    Such claim has been filed against a Debtor in a liquidated amount or has been listed on a Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on a Debtor's schedules;

(2)    Such claim has been filed against a Debtor or listed on a Debtor's schedules and is the subject of an existing objection filed by a Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)    Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless a Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)    Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

18.4    Confirmation Hearing.  The Court will set a hearing on the confirmation of the Plan to determine whether the requirements for confirmation of the Plan have been satisfied.

18.5    Acceptances Necessary to Confirm the Plan.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.   Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

18.6    <u>Confirmation of Plan Without Necessary Acceptances</u>.    Section 1191(b) of the Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any impaired class not accepting the Plan.  In the event that any class votes against the plan, the Debtor hereby request and move the Court under the provisions of this Plan outlined in Article 19 herein, for confirmation pursuant to the "cramdown" provisions of § 1191(b) of the Bankruptcy Code.  In connection therewith, the Debtors shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1191(c).

## ARTICLE 19
## "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

With respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtors will also request that the Court establish a value for any assets, the value of which is in dispute between a Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## ARTICLE 20
## RETENTION OF JURISDICTION

The Bankruptcy Court shall, after Confirmation, retain jurisdiction of this case to hear and determine the allowance of claims and all claims against a Debtor pursuant to Section 502 of the Code; to determine the allowance of timely filed claims resulting from the rejection of executory contracts; to determine any issues in pending adversary proceedings, and in adversary proceedings commenced post-confirmation, including, but not limited to, avoidance or turnover actions; to determine any dispute as to the classification or allowance of claims; to fix and determine all pre-confirmation professional fees and other costs of administration; to require the performance of any act contemplated by the provisions of this Plan necessary for the consummation of the Plan; and to resolve all the matters as may be set forth in the Order of Confirmation.  In the event an appeal is perfected from the Order confirming the Plan, the Bankruptcy Court shall also retain jurisdiction to enter such Orders regarding the disbursement of funds under the Plan or the consummation thereof as may be necessary to protect the interests of a Debtor, its creditors, and parties in interest.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SENECAL CONSTRUCTION CO., INC, | ) | CASE NO 23-00421-5-JNC |
| and | ) | |
| PIEDMONT DRAGWAY OF NC, LLC | ) | CASE NO 23-00422-5-JNC |
| | ) | |
| | ) | CHAPTER 11 |
| DEBTORS. | ) | |

<u>JOINT CHAPTER 11 PLAN</u>

Pursuant to the provisions of Section 1189 and 1190 of Subchapter V of the Bankruptcy Code (11 U.S.C. §§ 1189 & 1190), the Debtors hereby submit the following Joint Plan of Reorganization ("Plan.") As detailed herein, <u>the Debtors propose to pay all Allowed Claims in full with interest over time</u>.

<u>Description and History of the Debtor's Business</u>

Senecal Construction Co., Inc. ("Senecal") is a North Carolina corporation formed in 1998 with a principal offices and assets in Burlington, North Carolina. Senecal is a commercial metal framing and drywall company.  The most recent monthly report for Senecal is attached to this Plan as Exhibit "A."

Piedmont Dragway of NC LLC ("Piedmont") is a North Carolina limited liability company formed in 2011 with a principal offices and assets in Julian, North Carolina. Piedmont is a dragway which hosts drag racing and dirt drag racing competitions and offers concessions. On January 12, 2023, WFO Racing, LLC ("WFO") merged with Piedmont. Piedmont was the surviving company after the merger. The most recent monthly report for Piedmont is attached to this Plan as Exhibit "B."

Both Senecal and Piedmont are owned by Roland E. Senecal. Mr. Senecal is the president and sole shareholder of Senecal and the sole member of Piedmont. Mr. Senecal has filed his own Chapter 11 petition, Case No. 23-00419-5-JNC, and is filing a separate Chapter 11 Plan in his individual case.

<u>Liquidation Analysis</u>

To confirm this Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. Liquidation analyses for Senecal and Piedmont

are attached to this Plan as Exhibit "C.". This Joint Plan proposes to pay all creditors in full with interest.

### Ability to Make Plan Payments and Operate without Further Reorganization

To confirm this Plan, each Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. A projected monthly operating budget showing anticipated income, expenses, and payments under this Plan for each Debtor is attached as Exhibit D.

The Debtors believe that this Plan is feasible. The Plan also provides for the liquidation of real estate owned by Piedmont and Senecal in the event of an uncured default under the Plan.

### ARTICLE 1
### DEFINITIONS

The following terms used in this Chapter 11 Plan shall, unless the context otherwise requires, have the meanings specified below:

1.      Administrative Expense Claim:  a cost or expense of administration in the case allowable under § 503(b) of the Bankruptcy Code, including but not limited to any actual, necessary expense of preserving or liquidating the estate, any actual, necessary expense of operating the business of a Debtor, any actual, necessary expense of consummating the Plan and all allowances, costs and fees approved by the Bankruptcy Court in accordance with § 330 of the Bankruptcy Code.

2.      Allowed Administrative Expense Claim:  any existing or future Administrative Expense Claim either (i) for which a fee application has been filed and which has been allowed by a Final Order, or (ii) as to any other Administrative Expense Claim, an application was filed; and (a) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, or (b) any timely objection thereto has been determined and all or some portion of the claim has been allowed by a Final Order. Any post-confirmation costs and expenses reasonably necessary to consummate the Plan, including the bringing of adversary proceedings, shall also be included and paid as an Allowed Administrative Expense Claim.

3.      Allowed Claim: any claim (a) which shall have been listed by Senecal or Piedmont in a known amount as undisputed, non-contingent, and liquidated on the Schedules filed with the Court and to which a Debtor does not file an objection with the United States Bankruptcy Court, or which is ultimately allowed by the Bankruptcy Court over such an objection; (b) which shall have been properly filed as a Proof of Claim with the United States Bankruptcy Court on or prior to June 12, 2023, and to which a Debtor does not file an objection with the United States Bankruptcy Court, or which is ultimately allowed by the Bankruptcy Court over such an objection; or (c) which arose out of the rejection of an

2

executory contract or unexpired lease as provided for by the terms of this Plan, and which shall have been properly filed as a Proof of Claim with the United States Bankruptcy Court on or before the expiration of thirty (30) days after the Effective Date, and to which a Debtor does not file an objection or which is ultimately allowed by the Bankruptcy Court over any such objection. Where there is a difference between the amounts scheduled as undisputed by a Debtor in his Schedules and the amount set forth in the Proof of Claim filed by an affected creditor, the amount shown in the Proof of Claim shall govern for purposes of allowance unless objected to by a Debtor, in which case, the Claim shall be the amount allowed by the Bankruptcy Court. Unless otherwise specified in the Plan, Allowed Claims shall not include interest on the principal amount of the claim from and after the Filing Date.

4.      Allowed Unsecured Claim:  an Unsecured Claim that is or has become an Allowed Claim.

5.      Allowed Priority Tax Claim:  a Priority Tax Claim, which is or has become an Allowed Claim.

6.      Allowed Secured Claim:  a Secured Claim, which is or has become an Allowed Claim.

7.      Ballot:  the form or forms which will be distributed to Creditors pursuant to § 1125 of the Bankruptcy Code in connection with the Debtors' solicitation of acceptance or rejections of this Plan.

8.      Bankruptcy Code:  the Bankruptcy Reform Act of 1978, as amended, title 11 of the United States Code, in effect on the Filing Date.

9.      Bankruptcy Court:  the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in this case.

10.     Bankruptcy Rules:  the Federal Rules of Bankruptcy Procedure, as amended, in effect on the Filing Date.

11.     Business Day:  shall mean any day on which banks are open to carry on their ordinary commercial banking business in the State of North Carolina.

12.     Chapter 11 Cases:  the Chapter 11 cases of Piedmont and Senecal, commenced under the provisions of Chapter 11 of the Bankruptcy Code on the Filing Date in the Bankruptcy Court.

13.     Claim:  any right to payment, or any right to an equitable remedy for breach of performance if such breach gives rise to right to payment, whether or not such right to

payment or right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

14.     Class:  a class of Claims or Equity Interests as indicated in the Plan.

15.     Confirmation Date:  the date upon which an order confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, entered by the Bankruptcy Court, becomes a Final Order.

16.     Creditor:  any Entity that is the holder of a Claim against a Debtor that arose on or before the Filing Date or a Claim against a Debtor's estate of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code.

17.     Debtors: Senecal and Piedmont, the Debtors in these Chapter 11 Cases.

18.     Disputed Claim:  any Claim that is not an Administrative Expense Claim and either (i) is scheduled by a Debtor as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance thereof, in whole or in part, has been or is interposed prior to the final date provided under this Plan for the filing of such objections (or thereafter pursuant to an order of the Bankruptcy Court) and which objection has not been settled or determined by a Final Order.

19.     Disputed or Unresolved Administrative Expense Claim:  any existing or future Claim that is an Administrative Expense Claim and either : (i) (a) an application for payment was or will be filed on or before the date designated by this Plan, or pursuant to any order of the Bankruptcy Court, as the last date for filing the application for payment; and (b) as to which either (I) an objection to the allowance thereto has been interposed within the applicable period of limitation that has not yet been resolved by a Final Order, or (II) no Final Order has been issued if a Final Order is required by § 330 of the Bankruptcy Code; or (ii) an application for payment was filed after the last date designated for such filing as described above, whether or not an objection to the allowance thereof has been interposed.

20.     Distributable Property:  the property distributable to Creditors under this Plan, after deduction for any expenses properly chargeable against the Distributable Property in accordance with this Plan.

21.     Effective Date:  the date occurring fifteen (15) days after the Confirmation Date.

22.     Entity:  an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, or an incorporated organization.

23.     Filing Date: February 15, 2023, the date upon which the Debtors filed with the Bankruptcy Court their petitions for relief under title 11, commencing the Chapter 11 Cases.

24.     Final Order:  an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which any prescribed time to appeal has expired and no petition for certiorari is pending, or as to which any right to appeal or petition for certiorari has been waived in writing in a manner satisfactory to the Debtors or, if an appeal or certiorari thereof has been sought, the order or judgment of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed, or certiorari has been denied, and the prescribed time to take any further appeal or to seek certiorari or further re-argument or rehearing of any appeal has expired.

25.     Plan:  this Chapter 11 Plan of Reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

26.     Plan Rate: Simple interest at the rate of 7.5%, or such interest rate as the Bankruptcy Court finds is necessary for confirmation of this Plan.

27.     Priority Tax Claim: any Claim, other than an Administrative Expense claim, which is entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

28.     Secured Claim:  the portion of any Claim against a Debtor determined in accordance with section 506(a) of the Bankruptcy Code, as of the Confirmation Date, secured by a valid, perfected and unavoidable lien.

29.     Trustee:  Ciara Rogers, or such other person as may be appointed as Trustee by the Bankruptcy Court.

30.     Unclaimed Property:  any funds which are unclaimed on the 120th day following the date on which such Unclaimed Property was mailed or otherwise sent to the holder of an Allowed Claim or allowed Administrative Expense Claim pursuant to this Plan, and shall include (i) checks (and the funds represented thereby) that have been returned as undeliverable without a proper forwarding address, (ii) funds for checks which have not been presented for payment and paid, and  (iii) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

31.     Unsecured Claim:  any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, or an Equity Interest.

32.     Unsecured Creditor:  any Creditor that holds an Unsecured Claim.

5

ARTICLE 2
CONSTRUCTION

2.1     Applicability of the Bankruptcy Code and Bankruptcy Rules: Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Bankruptcy Code and in the Bankruptcy Rules.

ARTICLE 3
MEANS FOR IMPLEMENTING PLAN

3.1     Means for Implementing the Plan.  Upon Confirmation of the Plan, the Debtors shall continue to operate their businesses and shall use their disposable income to implement the Plan.  Unless otherwise order by the Court, the Debtors shall make all payments called for under the Plan. The Debtors will review and, if appropriate, object to claims following confirmation of the Plan.

3.2     Closing Case.  After substantial consummation of the Debtors' Chapter 11 Plan, the Chapter 11 Case will be closed. If necessary, the case may be reopened for entry of the discharge. If the case is reopened for such purpose, it may be reopened without a fee to the court.

3.3     Interest, Penalties, Fees.  There shall be no pre-payment penalties in the event that the Debtors are able to make Plan payments ahead of any scheduled dates or time frames as set forth in the Plan. Except as expressly stated in the Plan, or as allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorneys 'fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

ARTICLE 4
CLASSIFICATION OF
CLAIMS AND EQUITY INTERESTS

4.1     Classification of Claims and Interests.  Claims shall be classified as follows:

|  | Allowed Administrative Expense Claims |
|---|---|
| Class 1 | Allowed Priority and Secured Tax Claims of Senecal |
| Class 1A | Allowed Priority and Secured Tax Claims of Piedmont |

| Class 2 | Allowed Non-Tax priority Claims |
|---------|--------------------------------|
| Class 3 | Allowed Secured Claims of Pinnacle Bank |
| Class 4 | Allowed Secured Claims of Capital Community Bank |
| Class 5 | Allowed General Unsecured Claims of Senecal |
| Class 5A | Allowed General Unsecured Claims of Piedmont |

## ARTICLE 5
## ALLOWED ADMINISTRATIVE EXPENSE CLAIMS

5.1     Allowed Administrative Expense shall be paid in cash in full on the Effective Date or upon entry of an Order allowing such Administrative Claim, whichever is later, except that professional fees and expense reimbursements shall be paid in cash in full upon entry of an Order allowing the same, or pursuant to any agreement between the Debtors and the holder of an Allowed Administrative Expense Claim.

5.2     Creditors shall file an application for payment for any Administrative Expense Claim arising prior to the Confirmation Date on or before the Effective Date.  Failure to file a timely application for payment shall bar any person or Entity from asserting such Claim against a Debtor, except any professional (including the Trustee) rendering services to a Debtor and required to file an application for compensation pursuant to 11 U.S.C. § 328.  The Debtors estimate that Allowed Administrative Expense Claims on the Effective Date will be approximately $60,000. The Debtors believe they will have sufficient cash on hand on the Effective Date to pay these claims in full.

## ARTICLE 6
## ALLOWED PRIORITY AND SECURED TAX CLAIMS OF SENECAL
### (Class 1 Claims)

6.1     Description of Class. Class 1 Claims are comprised of Allowed Priority and Secured Tax Claims of Senecal.

6.2     Treatment.  Class 1 Claims held by taxing authorities shall be paid in full by Senecal

with interest at the taxing authority's statutory rate (or at the Plan Rate for non-taxing authorities) in equal monthly installments (split pro-rata among Class 1) so that the final payment shall be made within 5 years of the Filing Date, with the first such payment to be made on the first day of the first month following the Effective Date. If the Plan is confirmed under 1191(b) of the Code rather than 1191(a) of the Code, then Senecal shall increase the payments to Class 1 so that all remaining Projected Disposable Income is paid to Class 1 until Class 1 is paid in full.

6.3    In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue ("Department") or the Debtor fails to timely file and pay all post-confirmation taxes due to the Department, the subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court.

The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and a expressly reserved and shall survive confirmation. The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the Confirmation Order, the North Carolina Department of Revenue shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

Notwithstanding any other provisions in the Plan and the confirmation order, the priority tax claims of the North Carolina Department of Revenue are expressly recognized to be nondischargeable, and the same are not included in any discharge that may be issued in this case, absent a judgment to the contrary in an adversary proceeding filed and served in accordance with F.R.Bankr. P. 7003 and 7004.

6.4    Class 1 Claims are impaired.

Priority and Secured Tax Claims of $325,001298,304 have been scheduled or filed in the Senecal case. Some of these claims are for estimated taxes, and Senecal believes that the claims are overstated.

## ARTICLE 6A
## ALLOWED PRIORITY AND SECURED TAX CLAIMS OF PIEDMONT
### (Class 1A Claims)

6.1A    Description of Class.  Class 1A Claims are comprised of Allowed Priority and Secured Tax Claims of Piedmont.

6.2A    Treatment.  Class 1A Claims held by taxing authorities shall be paid in full by Piedmont with interest at the taxing authority's statutory rate (or at the Plan Rate for non-taxing authorities) in equal monthly installments (split pro-rata among Class 1A) so that the final payment

shall be made within 5 years of the Filing Date, with the first such payment to be made on the first day of the first month following the Effective Date. If the Plan is confirmed under 1191(b) of the Code rather than 1191(a) of the Code, then Piedmont shall increase the payments to Class 1A so that all remaining Projected Disposable Income is paid to Class 1A until Class 1A is paid in full.

6.3A    In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue ("Department") or the Debtor fails to timely file and pay all post-confirmation taxes due to the Department, the subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court.

The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and a expressly reserved and shall survive confirmation. The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the Confirmation Order, the North Carolina Department of Revenue shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

Notwithstanding any other provisions in the Plan and the confirmation order, the priority tax claims of the North Carolina Department of Revenue are expressly recognized to be nondischargeable, and the same are not included in any discharge that may be issued in this case, absent a judgment to the contrary in an adversary proceeding filed and served in accordance with F.R.Bankr. P. 7003 and 7004.

6.4    Class 1A Claims are impaired.

Priority tax claims of $69,204 56,218 have been scheduled or filed in the Piedmont case. Some of these claims are for estimated taxes, and Piedmont believes that the claims are overstated.

ARTICLE 7
ALLOWED NON-TAX PRIORITY CLAIMS OF SENECAL
(Class 2 Claims)

7.1    Description of Class.  Class 2 is comprised of all Allowed Priority Claims of Senecal not included in Class 1.

7.2    Treatment of Claims. Class 2 shall be paid in full by Senecal with interest at the Federal Judgment Rate in effect on the Effective Date in 54 equal monthly installments. The first payment shall be made on the first day of the first month following the Effective Date.

7.3    Impairment Status.  Class 2 is impaired under the Plan.

9

Priority claims of $102,377 have been scheduled or filed in the Senecal case.


ARTICLE 8
ALLOWED SECURED CLAIMS OF PINNACLE BANK
(Class 3 Claims)

8.1     Description of Class.   Class 3 is comprised of all Allowed Secured Claims of Pinnacle Bank as set forth in Claim No. 7 in the Senecal case and Claim No. 5 in the Piedmont case . Pinnacle Bank's claim are cross-collateralized and cross-defaulted and are  shall be deemed to be over-secured.

8.2     Treatment of Claims.  Class 3 shall retain its liens upon its collateral securing the loans, and such liens are valid encumbrances against the collateral, enforceable by Lender or its assigns upon a post-confirmation default by one or both of the Debtors. Class 3 shall be paid in full, including interest and fees allowed under Bankruptcy code section 506(b), with interest to accrue on the outstanding balance of each loan as of the Effective Date at the variable interest rate equal to  Plan  the Pinnacle Base Rate (the "Index") plus 1.0%  Rate  in 60 equal monthly installments. The first payment shall be made on the first day of the first month following the Effective Date. It is  anticipated  estimated that approximately $8,667333 per month will be made by Senecal, and $12,8461,949 per month will be made by Piedmont, but both Debtors shall remain obligated to Class 3 and payments may be made be either Debtor.  Unless otherwise expressly modified by the terms of this Plan, the Loan Documents that are not inconsistent with the Plan for the Claims shall remain in full force and effect.

Pinnacle Bank's pre-petition judgment lien against Senecal and Piedmont shall be deemed avoided without prejudice.  Pinnacle Bank may enforce its rights under its loan documents and applicable state and/or federal law against Senecal and/or Piedmont following a post-confirmation default under one or more of the loans.

8.3     Impairment Status.  Class 3 is impaired under the Plan.

Pinnacle has filed secured claims in the amount of $1,000,317, which figure does not yet include post-petition interest and fees.


ARTICLE 8
ALLOWED SECURED CLAIMS OF CAPITAL COMMUNITY BANK OF SENECAL
(Class 4 Claims)

8.1     Description of Class.   Class 4 is comprised of all Allowed Secured Claims of Capital Community Bank secured by the 2014 Ford F350 owned by Senecal.

10

8.2    Treatment of Claims.  ~~Class 4 shall retain its liens.~~ Class 4 shall be paid in full <u>on</u> ~~by Senecal with interest at the Plan Rate in 36 equal monthly installments. The first payment shall be made on the first day of the first month following~~ the Effective Date.

8.3    Impairment Status.  Class 4 is <u>un</u>impaired under the Plan.

Capital Community Bank has been scheduled with a secured claim of $13,037.

ARTICLE 9
ALLOWED GENERAL UNSECURED CLAIMS OF SENECAL
(Class 5 Claims)

9.1    Description of Class. Class 5 is comprised of the Allowed Claims of Senecal not treated elsewhere in the Plan.

9.2    Treatment of Claims. Class 5 shall be paid in full by Senecal with interest at the Federal Judgement Rate on the Effective Date in 60 equal monthly installments. The first payment shall be made on the first day of the first month following the Effective Date.

9.3    Impairment Status.  Class 5 is impaired under the Plan.

Senecal believes that General Unsecured claims in its case may total $370,000.

ARTICLE 10
ALLOWED GENERAL UNSECURED CLAIMS OF PIEDMONT
(Class 5A Claims)

10.1    Description of Class. Class 5A is comprised of the Allowed Claims of Piedmont not treated elsewhere in the Plan.

10.2    Treatment of Claims. Class 5A shall be paid in full by Piedmont with interest at the Federal Judgement Rate on the Effective Date in 60 equal monthly installments. The first payment shall be made on the first day of the first month following the Effective Date.

10.3    Impairment Status.  Class 5A is impaired under the Plan.

Piedmont believe that General Unsecured Claims in its case may total $50,000.

ARTICLE 11
EQUITY INTERESTS

11.1    Ownership of the Debtors shall remain the same.

ARTICE 12

11

ALLOWED CLAIMS UNDER
UNEXPIRED LEASES AND EXECUTORY CONTRACTS

12.1    Unexpired Leases and Executory Contracts. The confirmation of the Plan shall act as an acceptance of all leases and executory contracts listed in each Debtor s'Schedule G (as may be amended prior to the hearing on confirmation of the Plan) unless a motion to reject is filed prior to confirmation or a separate Court order is entered regarding such lease or contract. All parties shall have thirty (30) days from the Effective Date to file proof of claims for rejection damages.

ARTICLE 13
CAUSES OF ACTION

13.1    Except as expressly provided otherwise in this Plan, the Debtors preserve and intend to investigate and, if advisable, pursue causes of action arising under §§ 544, 545, 547, 548, 549, 550, or 553(b) of the Bankruptcy Code, or under any similar provisions of applicable state law to recover any preferences or fraudulent conveyances from any person. Funds recovered as a result of such actions shall be applied first in reimbursement of attorney's fees and other costs of such actions, and then the remainder shall be the property of the Debtors and used to fund the Plan.

ARTICLE 14
CONFIRMATION AS WAIVER AND RELEASE

14.1    Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtors, which release is supported by the requirements of this Plan and covenants contained herein.

14.2    Injunction. As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debts or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtors may have against any party in interest. This injunction shall not affect any creditor's ability to enforce rights against non-Debtor and non-Debtor property. **ALL LIENS NOT SPECIFICALLY PRESERVED BY THIS PLAN ARE EXTINGUISHED. ALL CREDITORS HOLDING SUCH LIENS ARE REQUIRED TO CANCEL THEM OF RECORD AND TERMINATE ALL UCC FINANCING STATEMENTS.**

14.3    Discharge.

12

A.    Consensual Confirmation Under § 1191(a).  The Debtors anticipate that the Plan will be confirmed consensually with the acceptance of all Impaired Classes, and the Debtors will be discharged pursuant to §1141 of the Code.

B.    Confirmation Under § 1191(b). If the Plan is confirmed under 1191(b) of the Code, the Debtors will receive a discharge as provided in section 1192.

**THE DEBTORS WILL ASK THE COURT TO CONFIRM THE PLAN UNDER § 1191(a).**

14.4    Until such time as the Discharge is entered, the provisions of the automatic stay shall remain in effect and be extended post-confirmation.  This provision of the Plan shall not apply to Pinnacle Bank.

ARTICLE 15
EXECUTION OF THE PLAN

15.1    Payments.  The Debtors will make payments as provided in this Plan, regardless of whether the Plan is confirmed under section 1191(a) or section 1191(b) unless the Court orders that payment be made by another party.

15.2    Events of Default. The occurrence of any of the following shall constitute an Event of Default of this Plan.

(i)    Failure to make payment as such payment comes due under the Plan.

15.3    Remedies Upon Default. Upon the occurrence of any Event of Default which not excused, postponed, modified, or waived, and after the affected creditor gives notice to a Debtor, the Debtor shall have 14 days to cure the default.  If the default is not cured within that period, then creditors may pursue all remedies under state and federal law.

Additionally, if the default is not cured, any party may require Piedmont to market and sell its real property by notifying Piedmont in writing.  Piedmont shall immediately forward a copy of the written notice to Pinnacle Bank upon of receipt of such notice.  Pinnacle Bank is not prohibited in any way from enforcing its rights against the real property, notwithstanding a party's request to Piedmont to market and sell the real property.  Any delay or forbearance in enforcing its rights against the real property and/or the Debtors by Pinnacle Bank shall not constitute a waiver of any of its rights and interests under its loan documents and applicable law nor prejudice Pinnacle Bank in any way from enforcing its rights and interest in the future.

Net Proceeds from the sale of the real property shall be used to pay Allowed Claims in the following order:

a. Class 3
b. Allowed Administrative Expense Claims
c. Class 1A
d Class 5A
e. Classes 1 and 2.
f. Class 5
g. Class 4

15.4    Revesting of Property of the Debtors. Property of the Estate shall re-vest in the Debtors following the Effective Date. At such time, the Debtors will hold all right, title and interest to the property of the Debtors.

15.5    Unclaimed Property.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Debtors shall not attempt to make any further distribution to such holder of the claim. If a distribution check is not negotiated by the creditor within 90 days of the date of the check, or the distribution check is not deliverable to the creditor by way of First Class U.S. Mail, addressed to the address listed in the Creditor's Proof of Claim or on the Petition, the Debtors will be entitled to void said check and retain said funds to be used in the Debtors' discretion.  Any Creditor whose funds are once not negotiated or are returned as described above shall not be part of any subsequent distribution.

## ARTICLE 16
## DEFECTS OR OMISSION

16.1    Defects or Omissions.   After confirmation, the proponents of the Plan may, with approval of the Court, remedy any defect or omission or reconcile any inconsistencies in the Plan, Disclosure Statement or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan, Disclosure Statement, or Confirmation Order, so long as such remedy does not materially or adversely affect the interests of creditors and other parties in interest.

## ARTICLE 17
## OTHER PROVISIONS

17.1    Extension of Payment Dates. If any payment under the Plan falls due on a Saturday, Sunday, or other day which is not a Business Day, then such due date shall be extended to the next following Business Day.

14

17.2    Notices.  Any notice to a Debtor under any obligations created or governed by this Plan must be in writing and sent by registered or certified mail, postage pre-paid, and addressed as follows (and to such other address as a Debtor may notify the creditor in writing):

> Ron Senecal
> P.O. Box 515
> Alamance, NC 27201

With Copies to:

> William P. Janvier, Esq.
> 6300 Creedmoor Rd., Suite 170-370
> Raleigh, NC 27612
> Tel.: (919) 582-2300

Notices must also be e-mailed to wjanvier@smvt.com and the e-mail on file for William Janvier with the Bankruptcy Court.

17.3    Reduction of Notice Periods. The notice period applicable to service of any notices on the creditors otherwise applicable, pursuant to the provisions of the Code or this Plan, including any notice of hearing on application or allowance of compensation of professional persons pursuant to Section 330 of the Code, is reduced to a fourteen (14) day period, inclusive of the three days for mailing pursuant to Rule 9006(f) of the Bankruptcy Rules with the exception of any applicable notice period relating to modification of the Plan prior to or after confirmation pursuant to Sections 1122 and 1123 of the Code. If no objections are filed in writing with the Court within said fourteen (14) day notice period, any said motion may be allowed by the Court without the necessity of further notice or hearing.

17.4    Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, deeds, or bills of sale or assignments of real or personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax. All sale transactions consummated by a Debtor and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including, without limitation, the sale by a Debtor of owned property pursuant to section 363(b) of the Bankruptcy Code and the assumption, assignment and sale by a Debtor of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, will be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, will not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. In addition, each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments

15

or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of this Plan.

17.5    Procedure for Payment of Professional Fees and Expense Reimbursement. Current counsel for the Debtors, and the current Court approved accountants for the Debtors shall not be subject to the fee application process for services rendered post-confirmation in furtherance or implementation of the confirmed Plan.

17.6    No Representations or Warranties Concerning Tax Attributes/Consequences. Neither Debtors nor the Reorganized Debtors make any representations or warranties to any creditor of the Debtor concerning the tax consequence of confirmation of this Plan of Reorganization, the effect of this Chapter 11 case, or as to the status of tax attributes of the Debtors.

17.7    Transfer of Claims. Claims may be transferred and will be honored only in accordance with Bankruptcy Rule 3001.

17.8    Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not a Debtor, such creditor shall, within two (2) weeks therefrom, inform the Debtors of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan and such payments shall be credited towards the Debtor's payment obligations under the Plan.

ARTICLE 18
ACCEPTANCE OR REJECTION OF PLAN;
EFFECT OF REJECTION BY AN IMPAIRED CLASS

18.1    Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

18.2    Acceptance by a Class of Creditors.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two- thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

18.3    Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

16

(1)      Such claim has been filed against a Debtor in a liquidated amount or has been listed on a Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on a Debtor's schedules;

(2)      Such claim has been filed against a Debtor or listed on a Debtor's schedules and is the subject of an existing objection filed by a Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)      Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless a Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)      Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

18.4      <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the requirements for confirmation of the Plan have been satisfied.

18.5      <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.   Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

18.6      <u>Confirmation of Plan Without Necessary Acceptances</u>.   Section 1191(b) of the Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any impaired class not accepting the Plan.  In the event that any class votes against the plan, the Debtor hereby request and move the Court under the provisions of this Plan outlined in Article 19 herein, for confirmation pursuant to the "cramdown" provisions of § 1191(b) of the Bankruptcy Code.  In connection therewith, the Debtors shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1191(c).

ARTICLE 19<br>"CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

With respect to any class of creditors impaired but not accepting the Plan by the requisite

17

majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtors will also request that the Court establish a value for any assets, the value of which is in dispute between a Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

ARTICLE 20
RETENTION OF JURISDICTION

The Bankruptcy Court shall, after Confirmation, retain jurisdiction of this case to hear and determine the allowance of claims and all claims against a Debtor pursuant to Section 502 of the Code; to determine the allowance of timely filed claims resulting from the rejection of executory contracts; to determine any issues in pending adversary proceedings, and in adversary proceedings commenced post-confirmation, including, but not limited to, avoidance or turnover actions; to determine any dispute as to the classification or allowance of claims; to fix and determine all pre-confirmation professional fees and other costs of administration; to require the performance of any act contemplated by the provisions of this Plan necessary for the consummation of the Plan; and to resolve all the matters as may be set forth in the Order of Confirmation. In the event an appeal is perfected from the Order confirming the Plan, the Bankruptcy Court shall also retain jurisdiction to enter such Orders regarding the disbursement of funds under the Plan or the consummation thereof as may be necessary to protect the interests of a Debtor, its creditors, and parties in interest.

This the 16th day of May, 2023

Senecal Construction, Inc.

By:_____
Roland E. Senecal, Jr.
Its: President

Piedmont Dragway of NC, LLC

By:_____
Ron Senecal
Its: Manager

Stevens Martin Vaughn & Tadych, PLLC

s/ William P. Janvier
William P. Janvier
N.C.S.B. No. 21136
6300 Creedmoor Rd., Ste. 170-370
Raleigh, NC 27612
Telephone: (919) 582-2323

19